JOURNAL ENTRY and OPINION
{¶ 1} Acting on complaints from staff at the Cleveland Metropolitan Housing Authority ("CMHA"), city of Cleveland police officers arrested plaintiff Maurice Rhoades, a CMHA resident, on charges that he used a telephone to menace CMHA staff. At the time of Rhoades' arraignment, the municipal court issued a protection order prohibiting him from having contact with CMHA staff and from entering CMHA administrative offices. As a result of this protection order, CMHA posted a flyer in its administrative office bearing Rhoades' picture and his social security number. The flyer contained a warning to the staff to contact the police if they observed Rhoades on CMHA property other than his apartment. The municipal court ultimately dismissed the criminal charges. Rhoades brought this pro se action seeking compensation for alleged injuries caused by his arrest. Read liberally, we find the complaint set forth claims of false arrest, malicious prosecution, libel and slander, defamation, invasion of privacy, and claims under Sections 1983 and 2000e of Title 42 of the United States Code. The parties filed cross-motions for summary judgment, and the court sided with CMHA. Rhoades appeals.
 {¶ 2} Rhoades has set forth 31 assignments of error (in only 10 pages of typed argument). We summarily reject the bulk of them as they do not conform to App.R. 12(A)(2) by being separately argued or were not sufficiently raised to the court in the dispositive motions. Those assignments of error not expressly mentioned in our discussion are therefore overruled. The remaining assignments of error will be addressed in summary form.
 I {¶ 3} The court did not err by denying Rhoades' motion for entry of judgment by default. Although CMHA did not file its answer within 28 days of the court's acceptance of Rhoades' amended complaint, CMHA did first seek leave to file an answer under Civ.R. 6(B)(2). In that motion, CMHA noted that it had attempted to negotiate a settlement in good faith, but that effort had failed. The court did not abuse its discretion by permitting CMHA leave to file its answer because CMHA demonstrated excusable neglect by failing to file an immediate answer. Griffey v.Rajan (1987), 33 Ohio St.3d 75, 79. And contrary to Rhoades' assertions, CMHA did file an answer to the amended complaint. See R. 11.
 II {¶ 4} The court did not err by denying Rhoades' motion for summary judgment as that motion did not set forth any basis, apart from his exoneration of criminal menacing charges, for judgment. The motion simply set forth the self-serving statement that there were no issues of material fact, and failed to argue that Rhoades was entitled to judgment as a matter of law.
 III {¶ 5} During litigation, the court granted Rhoades' unopposed motion to compel CMHA to answer interrogatories and produce certain documents. Rhoades claimed he did not receive the discovery and filed a motion which we liberally construe as a Civ.R. 56(F) motion stating that he could not respond to CMHA's motion for summary judgment without the benefit of these documents. The court did not rule on Rhoades' motion, so we have to presume that it intended to deny the motion.
 {¶ 6} Civ.R. 56(F) states:
 {¶ 7} "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasonsstated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." (Emphasis added.)
 {¶ 8} Application of Civ.R. 56(F) is not mandatory. The court has the discretion to allow additional time to permit a party opposing summary judgment to conduct further discovery. Banfield v. Turner (1999),131 Ohio App.3d 213, 216.
 {¶ 9} We find that the court did abuse its discretion by failing to rule on the motion. Rhoades' motion told the court that CMHA had failed to turn over "lease agreements and tenant files and records and emergency transfer records * * *." The motion went on to argue, however, that CMHA's failure to produce the discovery entitled him to the inference that "CMHA cannot produce evidence because there is none." He repeats this contention later in the motion.
 {¶ 10} Obviously, if CMHA does not possess the sought-after records, it cannot produce them. Any "delay" would be no delay at all, since Rhoades himself told the court that CMHA did not have the information that he requested. In any event, Rhoades utterly failed to demonstrate the necessity of the information, other than to make the irrelevant arguments stating that their absence somehow proved his case.
 IV {¶ 11} CMHA filed a motion for summary judgment in which it maintained it had immunity from prosecution under R.C. 2744.02(B) as Rhoades failed to set forth any facts that would show that CMHA acted maliciously. In addition, it maintained that Rhoades had failed to establish that kind of pattern or practice necessary to make out a federal law claim. The court granted CMHA's motion for summary judgment finding that Rhoades could not recover "even if each factual contention of [Rhoades'] complaint were established as fact."
 {¶ 12} A metropolitan housing authority is defined as "a body corporate and politic" under R.C. 3735.31, and "political subdivision" has been defined to include bodies "corporate and politic" under R.C.2744.01(F). As a political subdivision, CMHA is not liable in damages unless a specific exception to that immunity exists. If one of the exceptions apply, immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03
applies. Cater v. City of Cleveland, 83 Ohio St.3d 24, 1998-Ohio-421.
 {¶ 13} The only possible exception applicable is that listed under R.C. 2744.02(B)(2), which establishes the liability of political subdivisions for injuries caused by negligent acts performed by employees with respect to proprietary functions. However, there is no such general exception for governmental functions for entities like a housing authority. Thus, except as specifically provided in R.C. 2744.02(B)(1), (3), (4), and (5), with respect to governmental functions, political subdivisions retain their cloak of immunity from lawsuits stemming from employees' negligent or reckless acts. Wilson v. Stark Cty. Dept. ofHuman Serv. (1994), 70 Ohio St.3d 450, 452, 1994-Ohio-394. Since none of those exceptions exist in this case, the court did not err by granting CMHA's motion for summary judgment.
 V {¶ 14} The only remaining claims were those asserted under Sections 1983 and 2000e of Title 42, U.S.Code.
 A {¶ 15} The Civil Rights Act of 1871 as amended, Section 1983, Title 42, U.S. Code, provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * *"
 {¶ 16} Rhoades is required to establish two elements: "(1) the conduct in controversy must be committed by a person acting under color of state law and (2) the conduct must deprive the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States."1946 St. Clair Corp. v. City of Cleveland (1990), 49 Ohio St.3d 33, 34, citing Parratt v. Taylor (1981), 451 U.S. 527, 535, 101 S.Ct. 1908, 1912-13,68 L.Ed.2d 420. The term "official policy" refers to "formal rules or understandings — often but not always committed to writing — that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." While the term "policy" generally connotes a rule of general application, a decision tailored to a particular situation may also constitute a policy if made by the "official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 483-484. Norwellv. Cincinnati (1999), 133 Ohio App.3d 790, 806.
 {¶ 17} Although the complaint does not specifically identify just which allegation constituted a violation of section 1983, we presume that it relates to CMHA's posting of a flyer containing Rhoades' mug shot with the following language:
 {¶ 18} "Warning!!! A court order has been issued restraining the following individual from being on all CMHA properties with the exception of his own apartment.
 {¶ 19} "If he is observed on CMHA property contact the CMHA police department immediately at * * *.
 {¶ 20} "In the event that the suspect appears to be violent or threatening contact 911 for immediate assistance." (Bold lettering sic.).
 {¶ 21} Immediately below Rhoades' mug shot is his physical description and his social security number.
 {¶ 22} The court did not err by granting summary judgment on the Section 1983 claim because Rhoades failed to set forth which right of his had been violated by the posting of his social security number. He alleged that "HUD rules state that the social security number is private and confidential," but did not specify which "rules" were involved. Moreover, he could only state that "* * * any first year law student knows that you do not put a social security number on a flyer or wanted poster."
 {¶ 23} There are limits to how far a court must go in liberally construing a complaint for a pro se plaintiff. We can construe the complaint to state a claim under Section 1983, but we cannot make Rhoades' case for him. Absent a specific citation to a law that forbids disclosure of the social security number, we find the court did not err by granting summary judgment on this claim.
 B {¶ 24} Support for the claim under Section 2000e of Title 42 U.S. Code is even flimsier.
 {¶ 25} Title 42, U.S. Code, Section 2000e-2, states:
 {¶ 26} "(a) Employer practices. It shall be an unlawful employment practice for an employer —
 {¶ 27} "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
 {¶ 28} "(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."
 {¶ 29} In his complaint, Rhoades alleged that he was employed by CMHA and required to do "general labor and meet and greet the residents and general public and CMHA employees * * *." He went on to allege that:
 {¶ 30} "My duties I could not perform were greatly impaired in any sphere of life, work, or play because of the action of the defendant CMHA and the false charges against plaintiff pro se. He is constantly humiliated in meeting the public in this work, having been branded as a criminal in his community and to the public generally."
 {¶ 31} None of these allegations come close to stating a claim that Rhoades' employment had been affected because of his "race, color, religion, sex, or national origin." By his own reckoning, his employment had been affected by the posting of a flyer which informed CMHA staff that he was the subject of a protection order which forbid him from entering into the CMHA administrative offices. Nothing in that flyer concerned the subject matter of Section 2000e-2(a). The court did not err by granting summary judgment.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Rocco, J., Concur.